New York County.—HON. D. C. CALVIN, Surrogate.— November, 1879.

## MATTER OF MAIRS.

*In the matter of the estate of* JAMES MAIRS, *deceased.*

Where a collector of an estate deposited the funds of the estate, first with his firm and thereafter in his own name in bank, *Held,* that he should be charged with interest at the highest rate, for the time the funds were so deposited. Depositing trust funds in such a manner amounts to a misappropriation of the same, and renders an executor or col-

lector chargeable with the legal rate of interest, as though he had borrowed the funds and used them in his business.

The remedy against a collector in such a case is not limited to the proceedings provided by chapter 71, *Laws of* 1864.

MOTION to confirm report of auditor upon the final accounting of Edwin R. Livermore, as receiver and collector and executor of the estate of James Mairs, deceased.

The auditor finds that the collector and receiver deposited the funds that came to his hands as such, with a firm of which he was a member, and that they remained there some two or three months, after which an account was opened in his individual name, with the Corn Exchange Bank, and the funds were deposited there; that he received as collector and receiver $37,066.27, which was thus deposited and mingled with his own funds; and the auditor annexes a schedule, charging him, as collector and receiver, interest amounting to $2,529.57, being the interest on various sums received, and so deposited to the time when he opened an account as executor with the Corn Exchange Bank, after receiving letters testamentary herein.

ROE & MACKLIN, *for executors.*

JOHN H. BIRD, *for legatees.*

THE SURROGATE.—No exceptions have been filed to the report. Some embarrassment arises, therefore, in determining precisely what the question of contest is, but, on the argument, the only question of moment discussed was as to the propriety of charging the executor with interest, and it was understood that the question should be considered as though proper exceptions had

been interposed thereto. This practice is not to be commended, for it is quite impossible for the court to carry in mind the questions raised and discussed, without a formal statement of exceptions to the report. But as the case was thus argued and submitted, I proceed to discuss the propriety of such charge, as though exceptions had been filed thereto by the executor.

By chapter 71 of the *Laws of* 1864, section 2, a person appointed special administrator is required, within ten days after the receipt of money, to deposit the same in a trust company of the city of New York. By section 3 it is provided that, in case neglect should occur, the Surrogate may cite the special administrator, requiring him forthwith to deposit the same, or show cause, &c.; and section 4 provides for attachment in case of non-compliance, and section 12 requires him to account for such interest as shall have been received.

It is urged, by counsel for the executor, that these are the only remedies for a neglect of duty under the statute. I cannot concur in such a proposition. When a public officer shall neglect his duty under a peremptory statute, I am entirely clear that he may be made liable for any loss which occurs to the estate by reason of such neglect. The collector and receiver, in this case, cannot be held to have acted in good faith, and in supposed substantial compliance with the statute in question, for, in the first place, he deposited the money to the credit of his firm, thereby subjecting it to the business risks of that firm ; and when he deposited in bank he deposited it, not to his credit as special administrator and receiver of this estate, but to his credit individually, thus subjecting it to the risks of his personal business. In Shut-

tleworth v. Winter (55 *N. Y.*, 624), *per curiam*, it was held that an executor or administrator was not chargeable with interest, unless it appeared that he had used the money which had been received. In King v. Talbot (40 *N. Y.*, 96), it was held that the failure of trustees to place the trust funds in proper trust securities made the trustees chargeable when so invested at six per cent., with annual rests. At page 95, Mr. Justice WOODRUFF says: "Where the failure of a trustee in his duty is willful, or characterized by bad faith, the highest rate of interest should be imposed. But where good faith and mistake concur, the rate of interest rests in discretion that permits the consideration of all the circumstances which show that substantial justice can be done to the *cestui que trust* by allowing a less rate." In Hasler v. Hasler (1 *Bradf.*, 248), Judge BRADFORD held that where an administrator held funds of the estate in cash over eighteen months, and did not show that the money was kept in bank, or otherwise ready to be paid over, and did not explain the causes of delay, he should be chargeable with interest, on the presumption of use of the funds.

If, in this case, the collector and receiver had so deposited the funds as not to endanger them, I should feel disposed. notwithstanding the plain terms of the statute, to charge him with less than the actual rate of interest, perhaps at six per cent., as in the case of King v. Talbot. But in this case the collector, when he commingled the funds with those of his firm, and afterwards deposited them to his own credit, rendered them liable to seizure upon attachment against his firm, or himself individually. When trust funds are thus jeoparded, I entertain no doubt

that it amounts to a misappropriation, and that the executor and collector should be charged the usual rate of interest, as though he had borrowed the funds of the estate, and used them in his business.

This may be regarded as a harsh rule as against the collector and executor in this case, because the funds were not lost, and it does not appear that he could have invested them: but he should have deposited them in a trust company, where he would have received the usual current rate of interest paid by such institutions. To approve of a clear violation of duty imposed by law in this case, would be fraught with very great danger and loss to estates; for if a responsible collector, as in this case, shall be justified in thus violating the law and jeoparding trust funds, then other trustees would be justified in the use of trust funds in their own business, subject to all its fluctuations, provided such funds shall not be actually lost, and the trustee shall swear that he acted in good faith in thus violating a plain statute and a well defined obligation. Such a doctrine would be repugnant to every sense of justice, and I deem it my duty, on the first occasion, to hold the trustee to a rigid accountability not only in the interest of the beneficiaries under the decedent's will, but as a warning against the too frequent disregard of the well-defined obligations of trustees. The report of the auditor should be confirmed.

Ordered accordingly.